Good morning, Your Honors. May it please the Court, I am Amy Hayden from Fenwick and West, appointed pro bono counsel for Martha J. McNeely, who is also present in court today. I'd like to reserve two minutes for rebuttal, and I'll keep an eye on the clock. This case is about the harm that one of the U.S. government's early nuclear energy workers suffered as a result of the service to his country. His daughter is now seeking compensation from the Department of Labor under EOPA, a statute designed to compensate people just like her for her father's sacrifices. Concerning Ms. McNeely's Part B EOPA claims, there are two key points. One, the agency failed to obtain the required employment certification from the Department of Energy, and then also failed to consider the evidence of record of additional employment held by Mr. McNeely. Two, the DOO also failed to follow its own regulations and policies in evaluating the evidence concerning Mr. McNeely's medical conditions. First, on the employment issues. Because it is undisputed that Mr. McNeely suffered from at least a nonspecified cancer, compensation therefore turns on the outcome of the NIOSH dose reconstruction. It is important for all periods of relevant employment, and therefore all periods of exposure, to be included in this dose reconstruction for it to be accurate. The agency summarily concluded that any employment at WIPS is not covered by the Act because WIPS is a public utility. Whether WIPS is a public utility is not relevant. The relevant question is whether Mr. McNeely's work at the Hanford site for WIPS or another DOE contractor or subcontractor is employment within the statute. The DOL failed to make any determinations on this key issue. Well, let's just find out first, I mean, because we have to determine whether this agency's determination here, it's the Department of Labor who helps administer this benefits program for the DOE, for the Department of Energy, correct? Yes. We have to determine whether their decision was arbitrary and capricious, which is a pretty high bar, correct? That's right. Okay. And so the first thing Ms. McNeely and her brother had to show was that their father, who worked for the DOE, was qualified to receive benefits from this program and that his medical diagnosis was one that fits in the category that was allowed. And what is the evidence? What happened? I mean, there was no medical records to support that. So what do we do with that? Yes, Your Honor. There were no official medical records or other statements written by medical professionals. But for the — there are two ways that a claimant can obtain compensation under Part B. There is the first way where the claimant can show that the worker is a member of the SEC and suffered from specified cancer, or the claimant can show that the worker suffered from a nonspecified cancer, and then the compensation turns on the NIOSH dose reconstruction. And it's undisputed that Mr. McNeely suffered from squamous cell carcinoma of the lower lip. Counsel, Judge Gould, when you say the NIOSH dose, I suppose there's an acronym there. Could you spell that out, what that refers to? Yes. NIOSH is the National Institute of Occupational Safety and Health, and it's part of the Department of Health and Human Services. Okay. Thank you. And so what is the support, then, that you're pointing to that would fit that, you know, category? Sure. So there's actually two pieces to this. There's the evidence that Ms. McNeely submitted, but there's also the regulations that require the DOE to obtain certification from the Department of — whether the DOE agrees, disagrees, or cannot agree with the employment alleged by the claimant. Was the obligation on the agency brought up below? Yes, it was. And was it a part of your original appeal? Yes, it was. And this is — the regulation I'm referring to is 20 CFR, Section 30.112. This spells out the obligation to obtain that certification from the DOE. And while it's true that the DOL did obtain certification from the DOE on two other periods of employment, there is nothing in the administrative record indicating that the DOL ever obtained certification about the 1960s employment at Hanford. And so it was arbitrary and capricious for the agency to fail to obtain this certification. And even assuming the DOE disagreed or could not verify the Hanford employment in the 1960s, the DOL was then required to evaluate the evidence submitted by Ms. McNeely. And it really failed to do so. And this was also arbitrary and capricious. And I believe you're honored to ask what evidence there was that Ms. McNeely had submitted in support of this claim. And there were several pieces. There was a certificate of competency dated September 1965 for a project at the Hanford site awarded to Mr. McNeely, indicating that the — excuse me — that the project at WIPS was managed by DOE subcontractor Burns and Rowe. And Ms. McNeely also submitted some information that she received from a FOIA request, that Burns and Rowe was a DOE subcontractor at Hanford in the 1960s. But the DOE did not even — excuse me — but the agency below did not even mention this employment evidence in its opinion, especially on her second Part B claim. So Ms. McNeely is asking this Court to remand to the DOL for it to obtain the required certification from the Department of Energy. And then if, depending on the response from the DOE, for the DOL to evaluate the evidence of record and determine whether that evidence demonstrates by a preponderance that Mr. McNeely's WIPS employment is covered under the statute. Sotomayor, do you want to reserve the rest of your time? I'd actually like to address the medical evidence briefly. I see I have almost three minutes left, so hopefully I can do that in a minute. Our main argument on the medical evidence, the treatment of it, is that the DOL required official medical records written by medical professionals. But this was — this is contrary to the EOPA regulations, particularly since Ms. McNeely and her brother both submitted affidavits that the medical records relating to these conditions were no longer in existence. And I'd also like to point out in my remaining time that the DOL's own procedure manual, the EOPA procedure manual, contemplates a situation like this where the worker is deceased and medical records no longer exist, and provide for a procedure where the case file can be referred to a contract medical consultant, an outside physician, for evaluation of that evidence. Thank you. If there are no more questions, I'd like to reserve. Did anybody ask or inquire of those medical records from the DOL or the DOE, anybody, in terms of trying to help get those records? I know that Ms. McNeely attempted to obtain all sorts of records, including medical records, from the — from the DOE. And she was unsuccessful. And she was unsuccessful. Right. Right. And she made the agency aware. Would anybody from the agency try to assist her in that regard? Not that I'm aware of, no. Okay. Thank you. Thank you. Thank you. Good morning. My name is Michael Pyle, and I represent the Department of Labor in this case. I'd like to start with the Part B medical side. And I think this is really a matter of our AUER case deference and also this Court's decision in Basiri v. Xerox, where — in kind of a similar issue where there were an informal document, like our — like the agency's policy manual. This Court actually said it was error for the district court to only give that informal decision skid more guidance or succeed more deference, and it really deserved our deference. I'd like to highlight a couple things about the regulations. The appellant's entire argument is based on 30.113C, which says that an — that the agency may consider, quote, other evidence. And it doesn't say that the agency has to consider that or must consider that or has to give it any particular weight. But you have to look at the constellation of the regulations. They — appellants have never addressed Regulation 30.211, which is specific to cancer and says that a claimant establishes a cancer diagnosis, quote, with medical evidence that says forth an explicit diagnosis of cancer. And I think the most important regulation that is — has never been addressed by the agency, which says that when the agency is making a decision on whether there is a medical condition that's compensable, the agency is required to evaluate the medical evidence in accordance with a recognized and accepted diagnostic criteria used by physicians. So what that regulation, I think, says clearly is that whatever other evidence the agency, through the 114C, through a lens of is this evidence that would satisfy a doctor in establishing a medical diagnosis. If the court did not think that was clear, then we think that the court would give our deference to the — what kind of other items of evidence can be submitted. And the agency's policy manual talks about the one thing that they won't accept is an affidavit containing a diagnosis of cancer or other illness. But it does point to other things someone can use, a death certificate signed by a doctor, other medical reports and things like that. But it has to be medical evidence. Switching to the employment. The argument was that the agency did not — Well, before you go to employment, because the way I understand it, help me if I'm wrong, is that the district court denied the summary judgment in this case, you know, or granted relief to you all, and determined that there had not been a sufficient or affirmed basically what the board and the ALJ had determined, that there hadn't been sufficient medical connection or to support that the father here had been diagnosed with the proper form of cancer that was approved under the regulations. Is that correct? Yes. All right. And that's being disputed and being appealed, saying that there was enough based on the lip cancer, even though that wasn't approved or decided that that was sufficient by the board. Is that correct? I think I need to clarify. The agency found that lip cancer was established. She submitted actual medical records, pathology reports and things for the lip cancers. That was accepted by the agency. But through the process of the NIOSH, National Institute of Occupational Health Analysis, they found that there was a less than 30 percent chance that that lip cancer was attributable  And what happens in these situations? Because I want to deal with this first and then deal with whether or not she was a covered employee, which is what the discussion was earlier. What happens in those situations where the medical records aren't around anymore? What could she have done to establish or show proof when there's no longer medical records? Well, again, she does I did see a reg in here that said that when a person like in Ms. McNeely's situation can't find a record and she notifies the agency, there's a provision here that says the agency should help in trying to find them for her. I know she's not making that argument now, but I'm just trying to figure out what happens in those situations. The agency's regulations put the fundamental issues, they put the burden on the claimant to support the claim. And I guess what the agency kept seeing, we can see in some of her declarations, she's saying, you know, a good example, she submitted a declaration in connection with her Part E claim where she talked about how she had talked to her doctor and her doctor reviewed a bunch of material and in her declaration says, this doctor would say that my father had thyroid cancer and I think liver cancer and some other things. And so if that was true, that is what should be submitted to the agency with a request to reopen the claim if she got a In the Part B claims. A Part B claim, if she had a, you know, report from a physician who would say, you know, in my opinion there was this cancer in Mr. McNeely because of, you know, ABCD And then it would be up for the agency to determine, you know, how to evaluate that opinion. All right. And so on the Part E claims for the contractor sort of time that he worked, the dispute is whether or not she's a covered employee or one, whether there's jurisdiction. The district court questioned whether or not there was jurisdiction after 60 days. Is that right? Yes. And then said, I think if I'm the whole issue is even if there was jurisdiction, was she a covered employee based on the fact could she establish that she was capable of work after she's 23 years old? Am I correct on that? It's close. Okay. The Part E, the issue that is whether she was a covered child. Right. And it's on Part B is the issue of the extent of Mr. McNeely's covered employment. And the issue of covered employment is one where the agents or where the Congress drew a very precise line and determined that you have to be, it's who you were employed by, not who trained you, not who you were close to. It's who employed you. And you have to work for the DOE or a DOE contractor who had certain kind of contracts with the agency or work for a subcontractor that had certain types of contracts with DOE. So it's a very limited in scope. It's addressing a very specific issue of work, you know, for the Department of Energy or Department of Energy contractors, and it doesn't reach more broadly. And so your response to whether she was a covered child is what? That she has not established that to date. And the reason I say to date is that any claimant, Ms. McNeely or any other, if this Court affirms everything, she is able tomorrow to go to the agency, submit additional evidence, and request that it be reopened. Her Part E claim was denied on the merits because she didn't submit any competent evidence to show that she had a physical or mental disability that made her incapable of supporting herself as of the time of her father died in January 1981. And the odd thing is that what she submitted was something saying basically, I have a lot of medical records, but she never gave them to the agency. And so what the agency needs on the covered child issue would be medical records about Ms. McNeely and whether she had a physical or mental disability in early 1981 that made her incapable of supporting herself. And she did not submit those medical records, and so her claim was denied. And I guess let me ask you then again, but wasn't DOL staff required to undertake efforts to help find any medical records? Isn't there a provision that you have in your regulations that requires that? I'm not sure. Requires is the? What's the other? Because I'm looking at Section Chapter 2-0805E. It says the claims examiner, if the claims examiner obtains information that pertinent medical records have been destroyed or otherwise unavailable, the claims examiner should attempt to obtain from the physician written confirmation which contains the following information. An affirmation that the physician treated the employee for the claimed conditions, a statement that the requested medical records are no longer available, a discussion that includes the diagnosis and date of diagnosis. And that's the EEOICPA procedural manual prior to Version 1.0, Chapter 2-0800. I guess number one, they haven't argued that. Number two, I read it as saying they should, not that they have to. And number three, I think part of the problem is this isn't a case where she identified a particular doctor that treated him for cancer, so I'm not sure who the agency was supposed to follow up with other than I just, there just wasn't enough information for the agency to help, I think, is part of the problem. There wasn't specific information even about who was the treating doctor. Counsel, did she have a lawyer helping her in her communications with the agency? Yes, she did. Her original claim in 2002 was submitted by her lawyer, an authorized representative, and he was representing her through sometime in 2010, I believe the record evidence shows. Thank you. Thank you. Thank you. Thank you. I'd like to address two points about the Part B claim. Part B? Part B, yes, as in boy. Ms. McNeely submitted an affidavit that indicated that her father was treated at Harbor UCLA Medical Center in Torrance, California for a variety of conditions that she had knowledge that he was diagnosed with and that she had contacted Harbor UCLA and they did not have his medical records anymore because they'd been destroyed, I believe, in accordance with their document retention policy. In addition, my opposing counsel pointed out that the DOL has discretion. You're not arguing that they failed to help you. Well, regardless of whether they failed to help my client or not, the records just no longer exist. Yeah, well, go ahead. That's actually why we did not address that point in our briefing. But the other point is the discretion issue. So my opposing counsel is correct that the DOL has discretion. They may consider other evidence of medical records. But by determining that only official medical records written by a medical professional were required, the agency never had the opportunity to even exercise that discretion and even consider those records or to decide whether to refer her case out to an outside physician for review. I believe my time is up, unless there are additional questions. Thank you. Thank you both very much for your arguments here today. The case of Martha Jane McNeely v. The U.S. Department of Labor is now submitted.
judges: Gould, Murguia, Gritzner